OPINION
{¶ 1} Plaintiff-appellant Ginette Dyslin ("mother") appeals the August 16, 2002 Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, modifying the original agreed parenting plan between mother and defendant-appellee John S. Marks, IV ("father") to name father the residential parent of Destonie R. Marks, the parties' minor child.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Father and mother were married on August 15, 1992. One child was born as issue of said union, to wit: Destonie (DOB 7/7/94). The parties' marriage was dissolved via Amended Stipulated Final Decree and Parenting Plan filed September 24, 1997, by the Otero County District Court, Twelfth Judicial District, State of New Mexico. Pursuant to the terms of the parenting plan, mother and father shared joint legal custody of Destonie. The parties agreed to alternate custody of Destonie every two weeks until May, 1997. Commencing May 1, 1997, the parties agreed to alternate custody every three months, with mother having the first three month period. The decree provided the time sharing arrangement was on a trial basis and could be re-evaluated at the request of either party. The decree further noted the parties' anticipation the time sharing schedule would need to be changed when Destonie began formal schooling.
 {¶ 3} The parties rotated custody every three months until May, 1998. At that time, father, who was in the United State's Military Services, was sent to Korea to serve a one year "hitch." Destonie and Jessica, father's child from a previous relationship, resided with mother in Florida until August, 1999.
 {¶ 4} Upon completing his commitment to the military, father moved to Ohio. Jessica joined father while Destonie remained with mother in Florida where she began kindergarten. In March, 2000, mother joined the military. Upon agreement of the parties, Destonie moved to Ohio with father so mother could complete basic training and seven months of technical school. Destonie completed kindergarten in Ohio, and returned to mother in Florida for the summer.
 {¶ 5} Mother completed basic training, however, the technical school was postponed until August, 2000. Father renewed his agreement to care for Destonie until mother completed school. In August, 2000, Destonie began first grade in Canal Fulton, Ohio. Destonie visited mother in Florida during the Christmas holiday, 2000. When Destonie returned to Ohio, father informed mother of his decision not to honor his agreement to return Destonie to Florida when mother completed technical school. Father felt it was in Destonie's interest to maintain stability in her school and community.
 {¶ 6} On August 20, 2001, mother filed a Complaint in the Stark County Court of Common Pleas, Juvenile Division, asking the court to adopt and enforce the Divorce Decree and Shared Parenting Agreement ordered by the New Mexico court, and to grant mother custody. Subsequently, father filed a Verified Complaint for Custody. The trial court ordered the parties to mediate the dispute. Although the parties agreed one parent would be designated as residential parent for the school year, and the other would designated residential parent for the summer as well as vacations, the parties were unable to agree on who should assume which role. On July 22, 2002, the trial court conducted a final hearing on the matter. After considering the evidence, including deposition testimony and two guardian ad litem reports, the trial court found it was in Destonie's best interest to modify the New Mexico joint custody order, and order shared parenting in Ohio. The trial court designated father as residential parent for the school year and mother residential parent during the summer months. The trial court memorialized its ruling via Judgment Entry filed August 16, 2002.
 {¶ 7} It is from this judgment entry mother appeals, raising the following assignments of error:
 {¶ 8} "I. The trial court erred in adopting the opinion of the guidance counselor, Joan Cogan, as an expert witness since there was no evidence that she was qualified to give an opinion, there was no evidence that she made an opinion with a reasonable degree of certainty, and there was no evidence that would support her opinion.
 {¶ 9} "II. The trial court erred in awarding custody to the appellee since it failed to consider the remarriage of the appellee since the evidence showed that there was a great deal of change in the relationship between the appellee and appellant caused by the remarriage and since the guardian ad litem raised some serious issues concerning the appellee's spouse's conduct in the relationship.
 {¶ 10} "III. The trial court erred in awarding residential placement to the appellee because the evidence clearly showed that the agreement between the parties was used by the appellee as a subterfuge to gain custody of the child.
 {¶ 11} "IV. The trial court erred by awarding residential placement to the appellee because the evidence clearly shows that the relevant, competent and credible evidence does not support the court's findings and ruling."
 I. {¶ 12} In her first assignment of error, mother contends the trial court erred in adopting the opinion of Joan Cogan, Destonie's guidance counselor, as an expert witness. Specifically, mother asserts the testimony adduced at trial did not support a finding Cogan was qualified to give an expert opinion. Mother further maintains Cogan's opinion was not supported by the evidence.
 {¶ 13} We need not address this assignment of error as mother failed to properly preserve it for review by this Court. Because mother did not raise an objection to Cogan's testimony, she has waived any error in admission or consideration of Cogan's testimony on appeal.
 {¶ 14} Mother's first assignment of error is overruled.
 II. {¶ 15} In her second assignment of error, mother argues the trial court erred in failing to consider the remarriage of father when such remarriage had a negative impact upon the parties' relationship.
 {¶ 16} In its judgment entry, the trial court made a number of findings relative to the role of Heather Marks, father's new wife, with respect to Destonie's best interest. The trial court found:
 {¶ 17} "[Father] is currently married to Heather Marks. Heather is from Garfield Heights and met John while she was in college at Ashland University in 1996 and he was in the service in New Mexico. Mr. Marks moved to Ohio in July of 1999 and he and Heather began living together. They were married approximately two years ago. The couple currently own a home in Canal Fulton.
 {¶ 18} "* * * Destonie's relationship with her stepmother is described as close. Her stepmother characterizes the relationship with Destonie as more like a `big sister.' [Father] generally disciplines the girls and sets the rules. The stepmother views her role as a `female role model.' She and [father] have no plans at this time to have children." August 16, 2002 Judgment Entry at 6.
 {¶ 19} Further, the trial court concluded:
 {¶ 20} "Destonie has appropriate interaction and interrelationships with each parent and with her stepparents. Her relationship with her stepmother appears to be more bonded than with her stepfather, simply by virtue of having been placed with her for a greater period of time. Her stepmother sees herself as a female role mode for Destonie and is appropriately involved in activities and daily care." Id.
 {¶ 21} We find the aforequoted findings of fact and conclusions of law belie mother's assertion the trial court did not consider father's remarriage in determining its shared parenting order was in Destonie's best interest. Even if the trial court found Heather Marks had a "deleterious effect" on father and mother's relationship, the trial court, nonetheless, found such did not have an impact on Destonie, noting the parties' history of "putting aside their own problems to work for the best interest of Destonie." Id. at 11.
 {¶ 22} Accordingly, mother's second assignment of error is overruled.
 III. {¶ 23} In her third assignment of error, mother asserts the trial court erred in awarding residential placement of Destonie to father, maintaining father used the parties' agreement relative to the placement and care of Destonie during mother's basic training and schooling as a subterfuge to gain custody of the child.
 {¶ 24} An appellate court will not reverse a trial court's decision regarding the custody of a child when it is supported by competent and credible evidence, absent an abuse of discretion. Bechtelv. Bechtel (1990), 49 Ohio St.3d 21, syllabus. The discretion in which the trial court enjoys in custody matters should be accorded the upmost respect, given the nature of the proceeding and the impact the court's decision will have on the lives of the parties concerned. Miller v.Miller (1988), 37 Ohio St.3d 71.
 {¶ 25} The power of a trial court to modify an existing custody decree is provided in RC 3109.04(E)(1)(a), which states: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and * * * (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 26} A trial court essentially applies a three-part test in determining whether a modification of child custody is appropriate. The test is: 1) whether there has been a change in circumstances; 2) whether a modification is in the best interest of the child; and 3) whether the harm resulting from the change will be outweighed by the benefits. Inre: Kennedy (1994), 94 Ohio App.3d 414. Where the record supports an affirmative answer to each question, the modification is appropriate under RC 3109.04(E) and is not contrary to law. Id.
 {¶ 27} In its judgment entry, the trial court addressed these three factors in determining whether to modify the parties' joint custody plan. The trial court stated:
 {¶ 28} "6. The Court finds that subsequent to the issuance of the joint parenting orders by the New Mexico District Court in September of 1997, substantial changes in circumstances
 {¶ 29} have occurred in the lives of the parties and this child. The Court finds that a modification
 {¶ 30} of those prior orders is necessary to serve the best interest of the child and that the harm
 {¶ 31} likely to be caused by a change of environment is outweighed by the advantages of the
 {¶ 32} change of environment to the child.
 {¶ 33} "* * *
 {¶ 34} "8. Destonie has appropriate interaction and interrelationships with each parent and with her stepparents. * * * The most significant interaction and interrelationship which sways the Court in this case is the child's relationship with her stepsister, Jessica. The Court is convinced that it would be detrimental to both Destonie and Jessica to separate them in that they have developed a special bond and are very close.
 {¶ 35} "9. Destonie's adjustment to her school in the Northwest School District was difficult. With the assistance of school professionals and the cooperation of her parents, her adjustment has been successful. Her confidence and her grades are where they should be, and her school counselor indicates that any change in placement would certainly cause regression.
 {¶ 36} "* * *
 {¶ 37} "11. Prior to this dispute, these parents were very cooperative in permitting and facilitating visitation and companionship and interaction between them. These parents have a history of putting aside their own problems to work for the best interest of Destonie and it does not appear that they have made derogatory remarks regarding one another in the presence of the child. There has-been, some issue as to the father's inflexibility in permitting visitation and some evidence to indicate that this occurred; however, the father, more recently, has shown the ability to facilitate visitation and companionship which is evidenced by the parties' partial agreement as to the terms of such companionship." August 16, 2002 Judgment Entry at 11-12.
 {¶ 38} Because the trial court properly considered the three-part test in R.C. 3109.04(E)(1)(a), we find no abuse discretion in the trial court's decision to award residential placement of Destonie to father during the school year.
 {¶ 39} Mother's third assignment of error is overruled.
 IV. {¶ 40} In her final assignment of error, mother submits the trial court erred in awarding residential placement of Destonie to father as such award was against the manifest weight of the evidence. Mother states the trial court's reliance on certain evidence was overstated and overemphasized. We disagree.
 {¶ 41} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, syllabus 1, 227 N.E.2d 212.
 {¶ 42} As set forth supra, in determining whether to modify a prior decree allocating parental rights and responsibilities, a trial court must determine whether the best interest of the child would be served in doing so. We find evidence presented which supports a finding it was in Destonie's best interest to name father the residential parent. Destonie had had a difficult time adjusting to her new school, but father, with the help a school counselor, diligently worked to integrate Destonie into his community. Destonie enjoyed a close relationship with her stepsister, and her stepmother.
 {¶ 43} The trial court was in the best position to evaluate the witnesses and assess their credibility. Upon review of the entire record, we find the trial court's determination Destonie's best interest was served by naming father residential parent was not against the manifest weight of the evidence.
 {¶ 44} Mother's fourth assignment of error is overruled.
 {¶ 45} The judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.